IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**MARSHA JEAN PUTILLION,**

    **Plaintiff,**

v.                                **CASE NO. 2:11-cv-00476**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have submitted briefs in support of their positions.

The plaintiff, Marsha Jean Putillion (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on February 10, 2009, alleging disability as of March 1, 2007, due to ankle problems, asthma, back problems and carpal tunnel syndrome. (Tr. at 14, 121-22, 123-25, 172.) The claims were denied initially and upon reconsideration. (Tr. at 14.) On October 12, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 77-78.) The hearing was held on September 23, 2010, before the Honorable Irma J. Flottman. (Tr. at 29-58.) By decision dated

October 20, 2010, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-28.) On May 13, 2011, the Appeals Council considered additional evidence from the Commissioner, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 1-5.) On July 12, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2010). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By

satisfying inquiry four, the claimant establishes a <u>prima</u> <u>facie</u> case of disability. <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2010). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ found that Claimant had engaged in substantial gainful activity in 2007, 2008 and 2009, but that nevertheless, the ALJ would view the claim in the light most favorable to the Claimant and continue to the next step of the sequential evaluation. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic obstructive pulmonary disease (COPD), asthma, chronic lumbar strain, pain syndrome, peripheral artery disease, major depressive disorder and anxiety disorder. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 22.) As a result, Claimant can perform her past relevant work as a housekeeper. (Tr. at 28.) On this basis, benefits were denied. (Tr. at 28.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was forty-six years old at the time of the administrative hearing. (Tr. at 33.) Claimant completed the eighth grade. (Tr. at 34.) In the past, she worked as a babysitter, hotel housekeeper, and a cook in a fast food restaurant. (Tr. at 35-38.)

<u>The Medical Record</u>

The court has reviewed the medical evidence of record and will summarize it briefly below.

4

Evidence before the ALJ

On October 30, 2008, Claimant was brought to the emergency room with complaints of chest pain. She had a past medical history of COPD, hypothyroidism, hypertension and depression. Claimant smoked one and a half packs of cigarettes daily. She was diagnosed with acute coronary syndrome, acute COPD exacerbation, acute bronchitis, hypokalemia, hyponatremia and thrombocytosis. (Tr. at 255-56.)

On November 23, 2008, I. Derakhashan, M.D., a neurologist, examined Claimant related to her low back pain radiating to both legs for five years and nocturnal numbness of the upper extremities. Dr. Derakhashan recommended an MRI and nerve conduction studies. He noted that Claimant has features of carpal tunnel compression. He prescribed Norco, Darvocet, Tofranil PM and Lyrica. (Tr. at 299.)

EMG and nerve conduction studies on November 18, 2008, showed bilateral carpal tunnel compression in the upper extremities, more severe on the left. The ulnar and radial controls were normal. There was no significant delay across the elbow regarding the ulnar nerves. (Tr. at 209.)

The record includes treatment notes from Kathleen Lovin and others of Cabin Creek Health Systems. (Tr. at 318-44.) On September 23, 2008, Claimant saw Ms. Lovin for chronic pain management. Claimant's problem list included acquired hypothyroidism, anxiety state, depressive disorder, benign hypertension, chronic bronchitis, esophageal reflux and chronic pain. Claimant was there for "pain management, last UDS 4/08 which she failed. She had a DUCS letter sent to her, she has not had pain meds in several months. She does not understand why we will no longer [give] her any controlled meds, ever." (Tr. at 318.) She complained of

5

significant pain in her back and hips. She had been out of Lyrica for four months. Ms. Lovin's assessment included chronic pain with "DUCS" history, hypertension, chest pain, nonspecific and bronchitis. Ms. Lovin referred Claimant to a neurologist. (Tr. at 318-19.)

On May 20, 2009, Claimant presented for a routine visit. Claimant's problem list included acquired hypothyroidism, anxiety, depressive disorder, benign hypertension, chronic bronchitis with exacerbation, esophageal reflux and chronic pain. Claimant was off her medications due to loss of her medical card. Claimant complained of swelling because she had not been taking her thyroid replacement hormone and that her lungs were hurting. Joe Jarrell, M.D.'s assessment was hypothyroidism, GERD, hypertension, anxiety, chronic pain and depression. (Tr. at 320.) Claimant was encouraged to stop smoking and restart her medications. (Tr. at 321.)

On June 23, 2009, Kip Beard, M.D. examined Claimant at the request of the State disability determination service. Dr. Beard's impression was asthma/COPD, carpal tunnel syndrome, chronic low back pain and bilateral radicular symptoms, bilateral ankle pain, history suggestive of intermittent vascular claudication and femoral bruit with diminished pulses consistent with evidence of peripheral artery disease. Dr. Beard noted that Arterial Doppler showed very mild arterial occlusive disease with no occlusive disease on the left. (Tr. at 349.) Dr. Beard wrote that Claimant

> has asthma and COPD. This is reflected within the records. Lung exam revealed some wheezes, rhonchi, and coarse sounds. I did not appreciate obvious significant exertional dyspnea and pulmonary spirometry shows mild COPD.
>
> In terms of her carpal tunnel, the provocative testing is mildly positive on the left. There is no intrinsic hand atrophy. Manipulation is well

6

> preserved and grip strength appeared symmetric.
>
> In terms of the ankle pain, there was some reported pain and tenderness but no obvious deformity or other abnormal findings with normal range of motion. The gait was not limping. It was more slow and somewhat stiff in general appearance. Somewhat short stepped.
>
> In terms of back, back exam revealed some pain, tenderness, motion loss, negative straight leg raising. Reflexes are symmetric. There was no evidence of radiculopathy identified today.
>
> Regarding the symptoms of intermittent vascular claudication, as mentioned, due to the finding of the lower abdominal bruit and the left femoral bruit with what appeared to be some diminished distal pulses, I requested an arterial Doppler that was authorized, as mentioned that shows very mild right arterial occlusive disease and no occlusive disease on the left.

(Tr. at 349-50.)

On June 24, 2009, Lisa Tate, M.A. examined Claimant at the request of the State disability determination service. Claimant had reduced her smoking from two to one pack of cigarettes per day. Claimant complained of depression of varied severity, noting that more recently it was worse because she had lost her medical card and was unable to take her medication. (Tr. at 358.) Ms. Tate diagnosed major depressive disorder, single episode, severe on Axis I and made no Axis II diagnosis. (Tr. at 360.)

On July 6, 2009, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant had mild restriction in activities of daily living and maintaining social functioning, moderate difficulties in concentration, persistence and pace and no episodes of decompensation. (Tr. 364-77.)

On July 15, 2009, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, reduced by occasional postural limitations and a need to avoid concentrated exposure to

7

extreme cold and heat, noise, vibration and fumes, odors, dusts, gases and poor ventilation. (Tr. at 378-85.)

On September 16, 2009, a State agency medical source completed a Psychiatric Review Technique form and opined that there was insufficient evidence from which to opine about Claimant's alleged mental impairments. (Tr. at 387-400.)

On September 16, 2009, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that medical evidence in the file was insufficient for an assessment. (Tr. at 401-08.)

On January 9, 2009, Dr. Derakhashan examined Claimant and noted that she continued to have lower back pain radiating down both legs. He noted that medication helped Claimant's condition. (Tr. at 410.) Dr. Derakhashan completed a State of West Virginia Department of Health and Human Resources Medical Review Team (MRT) Physician's Summary on which he noted that he had last examined Claimant on January 9, 2009. He noted Claimant's diagnoses of carpal tunnel compression and chronic back pain. Her prognosis was guarded. He opined that Claimant was temporarily disabled from working. He opined that Claimant needed an MRI and carpal tunnel surgery. (Tr. 411.) On August 21, 2009, Dr. Derakhashan examined Claimant. She complained of lower back pain radiating to both legs and numbness due to carpal tunnel syndrome in both hands. Dr. Derakhashan noted that medication relieved Claimant's pain. (Tr. 412.) On June 2, 2010, Dr. Derakhashan examined Claimant, and she continued to complain of lower back pain radiating to the right shoulder. Medication helped relieve her pain. (Tr. at 413.) He increased Claimant's Lyrica and Norco. (Tr. 413.)

EMG and nerve conduction studies on June 29, 2010, showed bilateral carpal

tunnel compression in the upper extremities, more intense on the left. The ulnar and radial controls were normal. There was a significant delay across the elbow regarding the ulnar nerves. The lower extremity findings were normal. (Tr. at 418.)

The record includes additional treatment notes from Cabin Creek Health Systems dated July 27, 2009, through August 17, 2010. (Tr. at 424-53.) Claimant was a no show for her appointments on July 27, 2009, and January 11, 2010. (Tr. at 439-40.) On January 27, 2010, Claimant saw Ms. Lovin, and she gave Claimant medication refills. Claimant complained of stress incontinence. Ms. Lovin recommended Kegel exercises. Claimant expressed interest in stopping smoking but was not sure if she was ready to quit. (Tr. at 436-37.) On April 6, 2010, Ms. Lovin saw Claimant for a routine visit. Claimant was on eighteen medications. She reported not feeling well for the past two weeks. Claimant was on Buspar and was having side effects. Ms. Lovin's assessment was pharyngitis, bronchitis, known fibromyalgia, known depression/anxiety and hypothyroidism. (Tr. at 434-35.) Claimant was a no show on April 16, 2010. (Tr. at 432.)

On June 4, 2010, Ms. Lovin examined Claimant. She complained that she could no longer maintain a job because of her COPD, carpal tunnel syndrome and back pain. Claimant's ankles hurt and she was unable to mop, sweep or clean her kitchen. Claimant reported she could do basic chores but had to rest in between. Claimant stated that "[a]t work as a housekeeper/laundry I can no longer climb hotel stairs, walk through the hotel or house. Any exertion seems to immobilize me." (Tr. at 428.) Ms. Lovin's assessment was known COPD with exacerbation, tobacco abuse (starting to quit), CAD/acute coronary syndrome history, arthritis with possible ankylosing spondylitis in

9

work up, lumbago, arthralgia and anxiety/depression with anxiety attacks. Ms. Lovin opined that Claimant was unable to work in her customary occupation or any other work because of her diagnoses. Claimant should avoid work with large amounts of stress, increased endurance or lung capacity, increased walking, lifting, carrying, pulling, bending stooping, or climbing. She opined that Claimant could not work for five years. (Tr. at 430.)

On June 4, 2010, Claimant also saw Patience R. Land, M.S.W. who noted Claimant's history of depression and anxiety. She counseled Claimant on anxiety and depression and gave her information on anxiety management techniques and sleep tips. (Tr. 427.) On July 13, 2010, Claimant saw Ms. Lovin for an ulcerative necrotic breast lesion possibly due to a brown recluse spider bite. Claimant was referred to the emergency room. (Tr. 425.) On August 17, 2010, Claimant was a no show. (Tr. 424-25.)

Evidence Submitted to Appeals Council

On September 16, 2010, Dr. Jarrell and Ms. Lovin completed a Medical Assessment of Ability to do Work-Related Activities (Physical) on which they opined that Claimant could frequently lift only five pounds per day. They opined that Claimant could stand/walk three hours without interruption in an eight-hour work day (one hour without interruption), and sit for a total of seven hours in an eight-hour workday (ninety minutes without interruption), Claimant can never climb, balance, crouch or crawl but could stoop and kneel some portion of the day. Claimant could not be exposed to heights, noise or vibrations. Claimant was limited in reaching, handling, fingering and feeling. (Tr. at 454-57.)

Claimant's Challenge to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the new evidence offered to the Appeals Council from Dr. Jarrell and Ms. Lovin warranted a remand pursuant to sentence six of 42 U.S.C. § 405(g). In addition, Claimant argues that the ALJ committed reversible error in rejecting the opinion of Claimant's primary care provider, Ms. Lovin, and specifically, her opinion expressed on June 4, 2010. (Pl.'s Br. at 2-6.)

The Commissioner argues that the ALJ's determination is supported by substantial evidence, and she properly granted no weight to Ms. Lovin's unsupported conclusion that Claimant was disabled. The Commissioner further asserts that the evidence submitted to the Appeals Council does not provide a basis for changing the ALJ's decision. (Def.'s Br. at 10-16.)

The court proposes that the presiding District Judge find that the ALJ properly weighed the evidence of record from Ms. Lovin. In her decision, the ALJ made the following finding about Ms. Lovin's opinion expressed in the June 4, 2010, treatment note:

> On June 4, 2010, Ms. Lovin opined that the claimant was unable to perform customary work or like work on a full time basis due to diagnoses of known chronic obstructive pulmonary disease with exacerbation, tobacco abuse, history of coronary artery disease/acute coronary syndrome, arthritis with possible ankylosing spondylitis, lumbago, and depression with anxiety attacks. In addition, Ms. Lovin documented that the claimant should avoid work situations involving large amounts of stress; increased endurance or lung capacity; and increased walking, lifting, carrying, pulling, bending, stooping, or climbing. She noted that the claimant should undergo treatment from a pulmonologist and therapy to improve her breathing. She documented that the claimant should stop smoking. In addition, Ms. Lovin recommended that the claimant undergo pain management and rheumatology treatment for arthritis. She further

> noted that the claimant should continue with counseling and psychiatric care (Exhibit 11F, p. 7).  The undersigned rejects the opinion of Ms. Lovin because a physician's assistant is not an acceptable medical source.  In addition, the undersigned notes that the opinion of Ms. Lovin is not supported [by] the objective medical evidence of record or the record as a whole.

(Tr. at 27.)

The ALJ complied with the regulations related to weighing medical opinions in considering the evidence of record from Ms. Lovin.  Notably, as the ALJ pointed out, Ms. Lovin was not an "acceptable medical source" as defined in the regulations.  The regulations differentiate between "acceptable medical sources" such as licensed physicians and "other sources," whose opinions "may" be used "to show the severity of your impairment(s) and how it affects your ability to work."  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (2010).  As an acceptable medical source, particularly a treating source, the regulations provide direction as to how these opinions must be weighed and when they must be given controlling weight.  20 C.F.R. §§ 404.1527d(1)-(5), 416.927(1)-(5).  As an "other source," Ms. Lovin's opinion was relevant insofar as it showed the severity of her impairment and how it affected her ability to work.  However, as the ALJ aptly reasoned in her decision, Ms. Lovin's opinion was not supported by the objective medical evidence of record or the record as a whole.  Indeed, Ms. Lovin's opinion was not supported by her own treatment notes or other objective medical evidence from acceptable medical sources.  Claimant's arthritis with possibly ankylosing spondylitis was still in work up.  (Tr. at 430.)  In addition, just over one month after the June visit, on July 13, 2010, Ms. Lovin noted that Claimant had no back or neck pain, muscle weakness or radicular pain.  (Tr. at 426.)  The other evidence

12

of record from the examining and nonexamining sources above further supports the ALJ's ultimate determination that while Claimant was limited to light work with nonexertional limitations, Claimant could return to her former work.

Furthermore, the court proposes that the presiding District Judge find that substantial evidence supports the finding of the Appeals Council that the new evidence offered by Claimant did not provide a basis for changing the ALJ's decision.   In <u>Wilkins v. Secretary</u>, 953 F.2d 93, 96 (4th Cir. 1991), the Appeals Council incorporated into the administrative record a letter submitted with the request for review in which Wilkins' treating physician offered his opinion concerning the onset date of her depression.   The <u>Wilkins</u> court decided it was required to consider the physician's letter in determining whether substantial evidence supported the ALJ's findings. <u>Id.</u>   The Fourth Circuit stated:

> "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence."  *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972); *see* 42 U.S.C.A. § 405(g). The Appeals Council specifically incorporated Dr. Liu's letter of June 16, 1988 into the administrative record. Thus, we must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings.

<u>Id.</u>   Under <u>Wilkins</u>, the court must review the record as a whole, including the new evidence submitted to the Appeals Council, in order to determine whether the ALJ's decision is supported by substantial evidence.

Claimant submitted to the Appeals Council, a Medical Assessment of Ability to do Work-Related Activities (Physical) from Ms. Lovin and Dr. Jarrell dated September 16, 2010, shortly before the ALJ's decision was issued on October 20, 2010.   In its decision,

13

the Appeals Council stated that the information "does not provide a basis for changing the Administrative Law Judge's decision." (Tr. at 2.)

Because the Appeals Council incorporated the new evidence into the record, the court must determine whether, when the record as a whole (including the new evidence) is considered, substantial evidence supports the Commissioner's findings. As the Commissioner points out, the issue before the court is not whether a remand pursuant to sentence six of 42 U.S.C. § 405(g) is in order. The court proposes that the presiding District Judge find that when the record is viewed as a whole, including the assessment from Dr. Jarrell and Ms. Lovin, the ALJ's decision is supported by substantial evidence.

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Under § 404.1527(d)(2)(ii) and § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4), and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and

14

specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

Under § 404.1527(d)(1) and § 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." Martin v. Secretary of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986).

Dr. Jarrell saw Claimant on one occasion, May 20, 2009. On that date, Claimant had been off her medication due to loss of her medical card and needed her thyroid replacement hormone. She complained that her lungs were hurting. She was advised to stop smoking and restart Synthroid, Combivent, Spiriva, Accupril and Lyrica. Other than a tender thyroid, the physical examination was normal. (Tr. at 320-21.) Ms. Lovin obviously continued to see Claimant, but as noted above, her opinion was not supported by the other medical evidence of record.

In short, the opinions of Dr. Jarrell, who had a minimal treating relationship with Claimant, and Ms. Lovin, are not supported by or consistent with the remaining evidence of record indicating that Claimant is capable of returning to her prior work. Claimant received fairly conservative treatment for her back impairment. Claimant continued to

15

smoke despite her mild COPD and normal x-rays.  Claimant had peripheral artery disease, but she had very mild right sided arterial occlusive disease according to Dr. Beard, and she has not been treated by a specialist.   In addition, Claimant worked after her alleged onset date, which, as the ALJ indicated, would suggest her activities were greater than the Claimant generally reported.  (Tr. at 26.)   Finally, the opinions of examining and nonexamining physicians of record support a finding that Claimant could perform her past relevant work.   When the evidence of record is viewed as a whole, the determination of the Commissioner that Claimant can work remains supported by substantial evidence, and the court proposes that the presiding District Judge so find.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of

Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit the same to counsel of record.

April 23, 2012
    Date

Mary E. Stanley
United States Magistrate Judge